United States District Court
for the
District of Columbia

| | |
|---|---|
| David W. Noble<br>1 Fenceline Drive<br>Gaithersburg, Maryland 20878<br>240-477-7256<br><br>      Plaintiff<br><br>   versus<br><br>National Association of Letter<br> Carriers, AFL-CIO<br>100 Indiana Avenue, N.W.<br>Washington, D.C. 20001<br><br>      Defendant | Civil Action No. 17-cv-1255 (KBJ)<br><br>JURY TRIAL DEMANDED |

**First Amended Complaint**

1. Jurisdiction is proper under Title 28, U.S.C., §§ 1339 and 1346, and Title I of LMRDA, 29 U.S.C. §§ 411-12, and 29 U.S.C. § 481.

2. Venue is proper in the District of Columbia, as the Defendant National Association of Letter Carriers, AFL-CIO ("NALC") is headquartered here.

3. Defendant NALC is the exclusive bargaining agent for city letter carriers employed by the United States Postal Service ("USPS"). NALC has about 285,000 members, who are both active and retired city letter carriers. NALC is governed by a constitution, which was adopted by the membership. Exh. A.

4. Plaintiffs David W. Noble is a members of the NALC. Plaintiff Noble lives in and is a citizen of Maryland. Noble is a retired letter carrier.

**Concealment of the number of CCAs**

5.  NALC's constitution provides that a tentative collective bargaining agreement must be sent to the membership for a ratification referendum.

6.  On or about May 12, 2017 NALC and USPS agreed to a tentative collective bargaining agreement ("the tentative agreement") to replace an agreement that had expired ("the expired agreement") in May 2016.  On or about May 12, 2017 NALC published a summary of the tentative agreement on its website.  On or about May 18, 2017 NALC published the same summary of the tentative agreement in a bulletin mailed to about 13,000 USPS facilities at which city letter carriers are employed.  Exh C.  On or about June 1, 2017 NALC published substantially the same summary of the tentative agreement in the union's monthly magazine, the *Postal Record*.  Exh. B.

7.  The expired agreement allowed USPS to employ non-career letter carriers called City Carrier Assistants ("CCAs").  CCAs receive less pay and benefits than do career letter carriers.  The expired agreement capped CCA employment at about 20% of the letter carrier workforce.

8.  In 2012 NALC president Fred Rolando testified: "[B]ut for the present crisis, the concept of a lower paid, non-career letter carrier workforce would be totally unacceptable to the NALC. A non-career classification not only undermines our core mission as a labor union, but it is, literally, in direct conflict with the policy of the Postal Reorganization Act which explicitly directs the Postal Service to: '...place particular emphasis upon opportunities for career advancements of all officers and employees and the achievement of worthwhile and satisfying careers in the service of the United States. 39 U.S.C. Section 101(c).'" Exh. D.

9. NALC concealed the number of CCAs that would be allowed under the tentative agreement until June 23, 2017, which was after the ratification ballots had been mailed.

**Refusal to permit opponents of ratification to live stream the June 14th rap session.**

10.  On June 14, 2017 NALC held a rap session in Atlantic City, New Jersey.  The purpose of the rap session was to educate branch leaders about the proposed contract.  The rap session was chaired by Fred Rolando.  The rap session was attended by about 1,500 people, which is about 1/2 of 1 percent of NALC's membership.  The rap session was open to the public.  The rap session was the only event sponsored by the NALC to disseminate information about the tentative agreement.

11.  Plaintiff Noble and his adult son tried to live stream the rap session to the about 283,500 NALC members who were not present in Atlantic City.  Supporters of Rolando interfered with and prevented the attempt to make the live stream.  Rolando did not intervene to stop the interference.

**False information about the tentative agreement.**

12.  In the summaries of the tentative agreement published in the NALC *Bulletin*, the *Postal Record*, and on the NALC website, it was stated that the proposed contract: "[N]arrow[s] the compensation gap between city carrier assistants (CCAs) and career letter carriers."  That statement is false.  Exh. B, p. 4, left column.

**Disenfranchisement of retired members**

13. The summary of the tentative agreement posted on-line, published in the May 18, 2017 Bulletin, and in the June 1, 2017 *Postal Record* states that ballots will not be sent to NALC's approximately 65,000 members who are retired from postal employment.  Exh. B, p. 4, right column.

14.  The NALC Constitution provides that retired members are eligible to vote in ratification referendums.

15. The tentative agreement was negotiated by NALC president Fred Rolando, who is retired from the Postal Service. A majority of the members of NALC's 28-officer national executive council are retired from the Postal Service.

16. According to the summaries of the tentative agreement, some retirees will enjoy increases in their postal pensions under the agreement.

17. If retired members are excluded from the ratification referendum, those whose pensions will be increased will be prevented from registering their agreement or disagreement with the size of the increase; those whose pensions will not be increased will be prevented from registering their agreement or disagreement with NALC's failure to obtain any increase for them.

18. NALC mailed ballots for the ratification referendum during the week of June 19, 2017. It did not mail ballots to any retired members.

**Refusal to permit opponents of ratification to use NALC's email list.**

19. The incumbent NALC officers have a near-monopoly on communicating with the membership. The incumbents control the *Postal Record*, the *NALC Bulletin*, and the NALC website. The incumbent officers can also e-mail members at NALC's expense.

20. Plaintiff wishes to use NALC's list of members' e-mail addresses to contact the membership at plaintiff's own expense. On June 9, 2017 NALC refused to allow plaintiff to send e-mails to the members using NALC's list.

21. Plaintiff Noble is a bona fide candidate for president of the NALC.

**Defendant's Second Refusal to Permit Plaintiff to Use NALC's Email List.**

22. On August 3, 2017 Noble sent an email to NALC lawyer Peter DeChiara and asked that NALC designate a commercial emailer so he could send an email blast. A true and accurate copy of the email Noble sent to DeChiara is attached as Exh. G.

23. On August 7th DeChiara sent Noble an email saying that NALC continues to take the position that "at this time" it has no legal obligation to distribute campaign material. A true and accurate copy of DeChiara's August 7th email is attached as Exh. G.

24. On August 7th Noble asked DeChiara when NALC would permit Noble to send an email blast. A true and accurate copy of Noble's August 7th email is attached as Exh. G.

25. On August 10th DeChiara replied that NALC would distribute literature on behalf of candidates "sometime in 2018" and that "[NALC] will defer setting a precise date pending consideration of any future guidance from the Court in your lawsuit." A true and accurate copy of DeChiara's August 10th email is attached as Exh. G.

26. The next NALC election of national officers will probably begin in September 2018.

27. In the 128-year history of the NALC only once has a challenger unseated an incumbent NALC president. In 1978 outsider Vince Sombrotto defeated incumbent president J. Joseph Vacca. Sombrotto campaigned for national NALC president continuously from 1972 to 1978. Noble supported Sombrotto in the 1976 and 1978 elections.

**COUNT I: Concealing material information from the membership.**

28. Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1-27 above.

29. From the time the tentative agreement was announced until after the ratification ballots were mailed, NALC concealed from the membership the number of CCAs that USPS will be allowed to employ.

30. That NALC's concealment of material information from the membership prevented the members from having an informed and meaningful vote on the ratification of the tentative agreement, and violated Title I of LMRDA, 29 U.S.C. §§ 411-12.

31. WHEREFORE: Plaintiff requests:

A. Declaratory Judgment stating that NALC violated Title I of LMRDA, 29 U.S.C. §§ 411-12 by concealing material information from the membership.

B. That the Court Order NALC to cancel the ratification referendum begun during the week of June 19, 2017.

C. Such other relief that the Court determines is necessary and appropriate.

**COUNT II:  Refusal to permit opponents of ratification to live stream the June 14th rap session.**

32. Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1-27 above.

33. Plaintiff Noble and his adult son tried to live stream the rap session to the about 283,500 NALC members who were not present in Atlantic City.  Unknown supporters of Rolando interfered with and prevented the attempt to make the live stream.  Rolando did not intervene to stop the interference.

34. By stopping the live streaming of the rap session NALC prevented the members from having an informed and meaningful vote on the ratification of the tentative agreement, and violated Title I of LMRDA, 29 U.S.C. §§ 411-12.

35. WHEREFORE: Plaintiff requests:

A. Declaratory Judgment stating that NALC violated Title I of LMRDA, 29 U.S.C. §§ 411-12 by stopping the live streaming of the rap session.

B. That the Court Order NALC to cancel the ratification referendum begun during the week of June 19, 2017.

C. Such other relief that the Court determines is necessary and appropriate.

**COUNT III: Circulating false information about the tentative agreement.**

36. Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1-27 above.

37. In the summaries of the tentative agreement published in the NALC *Bulletin*, the *Postal Record*, and on the NALC website, NALC stated that the proposed contract: "[N]arrow[s] the compensation gap between city carrier assistants (CCAs) and career letter carriers." That statement is false.

38. By circulating false information about the tentative agreement NALC prevented the members from having an informed and meaningful vote on the ratification of the tentative agreement, and violated Title I of LMRDA, 29 U.S.C. §§ 411-12.

39. WHEREFORE:  Plaintiff requests:

A. Declaratory Judgment stating that NALC violated Title I of LMRDA, 29 U.S.C. §§ 411-12 by circulating false information about the tentative agreement.

B. That the Court Order NALC to cancel the ratification referendum begun during the week of June 19, 2017.

C. Such other relief that the Court determines is necessary and appropriate.

**COUNT IV: Disenfranchisement of retired members.**

40. Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1-27 above. .

41. The NALC Constitution provides that retired members may vote in ratification referendums.  In the alternative, a rule preventing retired members from voting is not reasonable. NALC excluded retired members from the ratification referendum.

42. By excluding retired members, NALC denied retired members their equal right to

vote in elections or referendums in violation of Title I of LMRDA, 29 U.S.C. §§ 411-12.

43.  WHEREFORE: Plaintiff requests:

A. Declaratory Judgment stating that NALC violated Title I of LMRDA, 29 U.S.C. §§ 411-12 by excluding retired members from voting in the ratification referendum.

B.  That the Court Order NALC to cancel the ratification referendum begun during the week of June 19, 2017.

C.  Such other relief that the Court determines is necessary and appropriate.

**COUNT V:   Refusal to permit opponents of ratification to use NALC's email list.**

44. Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1-27 above.

45.  Plaintiff wishes to use NALC's list of members' email addresses to contact the membership at plaintiffs' own expense.  On June 9, 2017 NALC refused to allow plaintiff to send emails to the members using NALC's list.  Plaintiff Noble is a bona fide candidate for president of the NALC.

46.  By refusing plaintiffs request to use NALC's list of members' email addresses NALC breached its duty to comply with all reasonable requests of any candidate to distribute by mail or otherwise at the candidate's expense campaign literature in aid of such person's candidacy to all members in good standing of such labor organization and to refrain from discrimination in favor of or against any candidate with respect to the use of lists of members, and violated 29 U.S.C. § 481(c).  In the alternative, NALC prevented the membership from having an informed and meaningful vote in the ratification referendum in violation of Title I of LMRDA, 29 U.S.C. §§ 411-12.

47.  WHEREFORE: Plaintiff requests:

A. Declaratory Judgment stating that NALC violated 29 U.S.C. 481(c) and Title I of LMRDA, 29 U.S.C. §§ 411-12 by refusing plaintiff's request to use NALC's list of email addresses.

B. That the Court Order NALC to cancel the ratification referendum begun during the week of June 19, 2017.

C. That the Court Order NALC to permit plaintiff to use NALC's list of members' email addresses to send campaign material at his own expense.

D. Such other relief that the Court determines is necessary and appropriate.

**COUNT VI:  Refusal to permit Plaintiff to use NALC's email list.**

48. Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1-27 above.

49. Plaintiff wishes to use NALC's list of members' email addresses to contact the membership at plaintiff's own expense.  On August 7, 2017 NALC refused to allow plaintiff to send e-mails to the members using NALC's list.  Plaintiff Noble is a bona fide candidate for president of the NALC.

50. By on August 7, 2017 refusing plaintiff's request to use NALC's list of members' email addresses NALC breached its duty to comply with all reasonable requests of any candidate to distribute by mail or otherwise at the candidate's expense campaign literature in aid of such person's candidacy to all members in good standing of such labor organization and to refrain from discrimination in favor of or against any candidate with respect to the use of lists of members, and violated 29 U.S.C. § 481(c).

51. WHEREFORE: Plaintiff requests:

A. Declaratory Judgment stating that NALC violated 29 U.S.C. 481(c) and Title I of

LMRDA, 29 U.S.C. §§ 411-12 by on August 7, 2017 refusing plaintiff's request to use NALC's list of email addresses.

      B. That the Court Order NALC to permit plaintiff to use NALC's list of members' email addresses to send campaign material at his own expense.

      C. Such other relief that the Court determines is necessary and appropriate.

JURY TRIAL DEMANDED.

                              Respectfully submitted,

                              /s/David W. Noble

                              David W. Noble
                              1 Fenceline Drive
                              Gaithersburg, Maryland 20878
                              240-477-7256
                              dwnoble@gmail.com

September 13, 2017