UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DAVID W. NOBLE,

    *Plaintiff*,

v.

NATIONAL ASSOCIATION OF LETTER
CARRIERS, AFL-CIO,

    *Defendant.*

Civil Action No. 17-1255 (DLF)

**MEMORANDUM OPINION**

This dispute arises from a membership ratification vote held in the summer of 2017 by Defendant National Association of Letter Carriers, AFL-CIO ("NALC"). Before the Court is Defendant's Motion to Dismiss Counts I, II, III, IV, and V of Plaintiff's First Amended Complaint. Dkt. 19. For the reasons that follow, the Court will grant the motion.[1]

**I. BACKGROUND**

In May 2017, NALC and the United States Postal Service ("USPS") agreed to a tentative collective bargaining agreement ("CBA") to replace their expired agreement. First Am. Compl. ¶ 6, Dkt. 18. Under the terms of NALC's constitution, NALC members must ratify a new CBA before it goes into effect. Accordingly, NALC held a ratification vote. NALC mailed ballots to certain members in late June 2017, with completed ballots due by July 29, 2017. *Id.* ¶¶ 5, 9; Def.'s Mem. in Support of Mot. to Dismiss at 3, Dkt. 19-1. Before the ratification vote was

---

[1] Also before the Court is Defendant's Motion to Stay Discovery Pending Resolution of the Motion to Dismiss. *See* Dkt. 19. Because the Court now resolves the Motion to Dismiss, the Motion to Stay Discovery will be denied.

completed, however, NALC member and retired letter carrier David W. Noble ("Noble"), acting *pro se*, challenged the vote, alleging various violations of the Labor-Management Reporting and Disclosure Act ("LMRDA").[2]

## A. The Labor-Management Reporting and Disclosure Act

The LMRDA applies to votes held by Defendant NALC, the exclusive bargaining representative for city letter carriers employed by USPS. The LMRDA provides that members of labor organizations "shall have equal rights and privileges" to participate in the organization's elections and referendums, "subject to reasonable rules and regulations in such organization's constitution and bylaws." 29 U.S.C. § 411(a)(1). The LMRDA also states that members shall have the right to "assemble freely with other members," "express any views," and "express [views] at meetings of the labor organization," provided that "nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations." *Id.* § 411(a)(2). In addition, labor organizations must "comply with all reasonable requests of any candidate to distribute by mail or otherwise at the candidate's expense campaign literature in aid of such person's candidacy to all members in good standing of such labor organization." *Id.* § 481(c).

---

[2] Plaintiff Noble filed the original complaint in this action with Thomas Houff, an active USPS letter carrier, but Houff is no longer a plaintiff. *See* Original Compl. ¶ 4, Dkt. 1; First Am. Compl. ¶ 4, Dkt. 18.

B. **Procedural History**

1. **Original Complaint**

Plaintiff Noble, with Thomas Houff, filed the original complaint in this action on June 27, 2017. Original Compl. ¶ 4, Dkt. 1. The original complaint asserted five counts. Count I alleged that NALC "concealed from the membership" the number of non-career City Carrier Assistants ("CCAs") that USPS could employ under the proposed CBA. *Id.* ¶¶ 23-24. By not releasing this information "until after the ratification ballots were mailed," NALC allegedly violated the LMRDA. *Id.* Count II also asserted an LMRDA violation by alleging that "[u]nknown supporters of [NALC President] Rolando interfered with and prevented" Noble from internet live-streaming a "rap session" meeting held in Atlantic City, New Jersey on June 14, 2017. *Id.* ¶¶ 27-28. Likewise, Counts III and IV asserted that NALC violated the LMRDA by publishing false information about the tentative CBA before the ratification vote and unlawfully excluding retired members from the ratification vote. *Id.* ¶¶ 31-32, 35-36. Finally, Count V alleged that NALC "refus[ed] to permit opponents of ratification to use NALC's email list," thus violating the LMRDA. *Id.* ¶¶ 38-40.

For relief, the plaintiffs requested that the Court "[o]rder NALC to cancel the ratification referendum begun during the week of June 19, 2017," "[o]rder NALC to permit plaintiffs to use NALC's list of members' email addresses" to oppose ratification, and issue a declaratory judgment stating that NALC violated the LMRDA. *Id.* ¶ 41.

2. **TRO and Preliminary Injunction Motion**

On July 10, 2017, the plaintiffs moved for a temporary restraining order requiring NALC "to refrain from opening the [ratification] ballots" and for a preliminary injunction requiring NALC "to cancel that ratification referendum." Pls.' Mot. for TRO & Prelim. Inj. at 1, Dkt. 5. At the motion hearing, the Court found that the plaintiffs "ha[d] not established a likelihood of

3

success on the merits of their claims," nor had they established that the balance of harms weighed in their favor or that "it [was] in the public interest for the Court to enjoin the counting of the ratification vote." Tr. of Mot. Hr'g at 127-28, July 28, 2017, Dkt. 15.

The Court acknowledged that plaintiffs could suffer irreparable harm because "the Court assumes, along with the parties, that the challenged ratification vote on the proposed agreement [*cannot*] *be undone* if the instant case proceeds on the merits." *Id.* at 142 (emphasis added); *see also id.* at 128 (acknowledging potential harm because "there can't be a do-over" of the ratification vote). Because that concern "d[id] not outweigh the other preliminary injunction factors," the Court denied the motion. *Id.*; *see also* Order, Dkt. 14.

As a result, the ratification vote continued as scheduled. On August 7, 2017, NALC announced that voters ratified the CBA by a vote of 78,935 in favor and 4,732 against. Renfroe Second Decl. ¶ 3, Dkt. 19-2.

### 3. First Amended Complaint

After the vote, Noble filed an amended complaint, this time without Thomas Houff as a plaintiff. First Am. Compl. ¶ 4, Dkt. 18. The amended complaint asserts six counts. The first five counts in the amended complaint are identical to the five counts asserted in the original complaint. *Id.* ¶¶ 28-47; *see also supra* Section I.B.1. Only Count VI is new; it asserts that NALC violated the LMRDA on August 7, 2017 by "refusing to allow plaintiff to send e-mails [regarding the 2018 NALC presidential election] to the members using NALC's list." *Id.* ¶¶ 49-50. Nobel requests the same relief set forth in the original complaint: that the Court "[o]rder NALC to cancel the ratification referendum begun during the week of June 19," "[o]rder NALC to permit plaintiff to use NALC's list of members' email addresses," and issue a declaratory judgment stating that NALC violated the LMRDA. *Id.* ¶ 47.

4

On September 25, 2017, NALC moved to dismiss the first five counts of the amended complaint as moot. Dkt. 19. On December 4, 2017, the case was transferred to the undersigned judge.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss an action or claim when the court lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A motion to dismiss for mootness is properly brought under Rule 12(b)(1) because "mootness itself deprives the court of jurisdiction." *Indian River Cty. v. Rogoff*, 254 F. Supp. 3d 15, 18-19 (D.D.C. 2017). "Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies." *Conservation Force, Inc. v. Jewell*, 733 F.3d 1200, 1204 (D.C. Cir. 2013) (quoting *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983)); *see also* U.S. Const. art. III, § 2. To ensure an actual controversy remains extant, mootness must be assessed at "all stages of review, not merely at the time the complaint is filed." *Decker v. Nw. Envtl. Def. Ctr.*, 568 U.S. 597, 609 (2013).

A case or claim is moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Schmidt v. United States*, 749 F.3d 1064, 1068 (D.C. Cir. 2014) (quoting *Larsen v. U.S. Navy*, 525 F.3d 1, 3-4 (D.C. Cir. 2008)). This occurs when, for example, "intervening events make it impossible to grant the prevailing party effective relief," *Lemon v. Geren*, 514 F.3d 1312, 1315 (D.C. Cir. 2008), or when the Court's decision "will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *Aref v. Lynch*, 833 F.3d 242, 250 (D.C. Cir. 2016) (quoting *Am. Bar Ass'n v. FTC*, 636 F.3d 641, 645 (D.C. Cir. 2011)).

"The initial 'heavy burden' of establishing mootness lies with the party asserting a case is moot, but the opposing party bears the burden of showing an exception applies." *Honeywell Int'l, Inc. v. Nuclear Regulatory Comm'n*, 628 F.3d 568, 576 (D.C. Cir. 2010) (citations omitted). An exception arises when a dispute is "capable of repetition yet evad[es] review." *United Bhd. of Carpenters v. Operative Plasterers' Int'l Ass'n*, 721 F.3d 678, 687 (D.C. Cir. 2013). This exception applies if "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Id.* (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982)).

"When ruling on a Rule 12(b)(1) motion, the court must treat the complaint's factual allegations as true and afford the plaintiff the benefit of all inferences that can be derived from the facts alleged." *Jeong Seon Han v. Lynch*, 223 F. Supp. 3d 95, 103 (D.D.C. 2016) (internal quotation marks and citation omitted). Those factual allegations, however, receive "closer scrutiny" than they would in the Rule 12(b)(6) context. *Id.* Also, unlike the Rule 12(b)(6) context, a court may consider documents outside the pleadings to evaluate whether it has jurisdiction. *See Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005). If the court determines that it lacks jurisdiction because a claim is moot, the court must dismiss the claim. Fed. R. Civ. P. 12(b)(1), 12(h)(3).

### III. ANALYSIS

The parties do not contest that the ratification vote cannot be undone. *See* Pl.'s Opp. at 1-2, Dkt. 21; Tr. of Mot. Hr'g at 142, July 28, 2017, Dkt. 15. Even so, Noble challenges the completed vote in Counts I-V of his amended complaint, asserting violations of the LMRDA. Defendant NALC argues that Counts I-V should be dismissed on mootness grounds.

All five counts allege that Noble was wronged in an election that concluded months ago. Counts I and III allege that NALC concealed material information and published false information about the tentative CBA before the vote. First Am. Compl. ¶¶ 30, 38, Dkt. 18. Count II alleges that NALC unlawfully prevented Noble from live-streaming the "rap session" in Atlantic City before the vote was completed. *Id.* ¶ 34. Count IV alleges that NALC unlawfully excluded retired members from voting. *Id.* ¶ 42. And Count V alleges that NALC unlawfully prevented Noble from using NALC's email list to oppose the proposed CBA. *Id.* ¶ 46.

Based on these allegations, Noble asserts that NALC "denied members their equal right to vote" and "prevented members from having an informed and meaningful vote on the ratification of the tentative agreement," thus violating the LMRDA. *Id.* ¶¶ 30, 34, 38, 42, 46. For relief, Noble maintains his request that the Court "[o]rder NALC to cancel the ratification referendum begun during the week of June 19," "[o]rder NALC to permit plaintiff to use NALC's list of members' email addresses" to oppose ratification, and issue a declaratory judgment stating that NALC violated the LMRDA. *Id.* ¶ 47.

Although such claims may have presented a live controversy before the ratification vote, "intervening events"—namely, the ratification vote—"make it impossible to grant [Noble] relief." *Lemon*, 514 F.3d at 1315. This Court "has no power to alter the past." *Herron for Cong. v. FEC*, 903 F. Supp. 2d 9, 13 (D.D.C. 2012). Therefore, it cannot grant the relief requested by Noble: the Court cannot enjoin or cancel the ratification vote months after it was held, nor can the Court permit Noble to use NALC's email list to oppose a vote that already occurred. Because Noble's claims no longer present a live controversy, they are moot. *See Virginians Against a Corrupt Cong. v. Moran*, No. 92-5498, 1993 WL 260710, at *1 (D.C. Cir. June 29, 1993) (granting motion to dismiss for mootness because "[t]he passage into history of the 1992

7

election makes it impossible for this or any court to grant meaningful relief with respect to that election."); *Endeley v. United States Dep't of Def.*, No. 17-cv-0733, 2017 WL 3327569, at *6 (D.D.C. Aug. 3, 2017) ("[T]he Court cannot enjoin or otherwise provide a non-monetary remedy (such as declaratory relief) for a past event."); *Sibley v. Alexander*, 916 F. Supp. 2d 58, 62 (D.D.C. 2013) (granting motion to dismiss for, *inter alia*, mootness where plaintiff "sought to enjoin the electors from casting their ballots" in an vote that "already occurred").

Noble does not argue that Counts I-V survive via the exception for claims that are "capable of repetition yet evade review," *see* Pl.'s Opp. at 1-2, but the exception does not apply to his claims. For a dispute to be "capable of repetition," there must be a "reasonable expectation that the same complaining party would be subjected to the same action again." *United Bhd. of Carpenters*, 721 F.3d at 687. "This prong requires that the same parties will engage in litigation over the same issues in the future." *Id.* at 688.

In this dispute, Noble has not shown that the same issues are likely to recur in the future. In Count I, Noble alleges that NALC concealed information that was material to the upcoming ratification vote, specifically the number of CCAs that USPS could employ under the proposed CBA. First Am. Compl. ¶ 29. Similarly, Count III alleges that NALC falsely stated in May and June 2017 that the proposed CBA narrowed the compensation gap between CCAs and career letter carriers. *Id.* ¶¶ 6, 37. Noble has not shown, however, that these alleged actions amounted to anything more than a "one-time event." *Herron*, 903 F. Supp. 2d at 15. NALC only holds a ratification vote when it successfully reaches an agreement with USPS. When NALC and USPS do not reach an agreement, an arbitration board decides the CBA's terms, without a ratification vote. Renfroe Second Decl. ¶ 2, Dkt. 19-2. Before the CBA ratification vote challenged by Noble, ten years had passed since the last NALC contract ratification vote. *Id.* As a result, any

8

future need to negotiate a new CBA, and thus any future CBA ratification vote, remains speculative at this time. And it remains unknown whether any future CBA would include the same terms as the CBA opposed by Noble, whether NALC would take the same alleged actions to conceal or misrepresent the CBA's terms, and whether the same legal issues would arise.

The issue in Count II is also unlikely to recur. Noble asserts that NALC violated the LMRDA by preventing him from live-streaming the "rap session" in Atlantic City on June 14, 2017. First Am. Compl. ¶¶ 33-34. Noble has given no reason to expect that (i) there will be future rap sessions; (ii) he or others will seek to live-stream them; (iii) such actions will conflict with future NALC policies; (iv) NALC will act to prevent live-streaming; and (v) the same legal issue will arise. A decision on Noble's claim, then, would "no[t] have a more-than-speculative chance of affecting [Noble's rights] in the future." *Aref*, 833 F.3d at 250 (quoting *Am. Bar Ass'n*, 636 F.3d at 645).

Likewise, Noble has not shown a reasonable expectation that NALC will subject him to the same actions to limit retiree voting as alleged in Count IV. First Am. Compl ¶¶ 41-42. Again, any future CBA ratification vote remains speculative. Moreover, the NALC convention has the authority to change NALC's voting rules for future votes. Renfroe Second Decl. ¶ 4. In the event of a future vote, it is unknown whether NALC would seek to limit retiree voting, whether NALC's voting rules would treat the voting rights of retirees in the same manner, and whether the same legal issues would arise.

The issue in Count V is also unlikely to recur. Noble asserts that NALC violated the LMRDA by refusing to permit him to use NALC's email list to oppose ratification of the proposed CBA. First Am. Compl. ¶¶ 44-46. Noble has given no reason to expect, however, that NALC would take the same alleged action to prevent opponents of any future CBA from using

9

NALC's email list.[3]  As a result, there is not a reasonable expectation that the same actions and issues alleged in Count V—as well as Counts I-IV—will arise again.

In addition, even if those actions and issues arose again, there is not a reasonable expectation that NALC would subject the "same complaining party"—Noble—"to the same action[s]." *United Bhd. of Carpenters*, 721 F.3d at 687.  As discussed above, future CBA ratification votes remain speculative.  In the same way, Noble's involvement in any future CBA ratification votes remains speculative.  Therefore, Noble has not shown that his claims in Counts I-V are sufficiently "capable of repetition" to survive dismissal for mootness.

Finally, Noble is not aided by his requests for declaratory judgment.  He argues that his claims are not moot because the Court can provide declaratory relief.  Pl.'s Opp. at 1-2.  But "[g]enerally, if a case is moot, a request for declaratory judgment will not resuscitate the lawsuit, unless an exception to the mootness doctrine applies." *Ctr. for Biological Diversity v. Tidwell*, 239 F. Supp. 3d 213, 226 (D.D.C. 2017).  In particular, "[w]here an intervening event renders the underlying case moot, a declaratory judgment . . . affords the plaintiff[] no relief whatsoever." *NBC-USA Hous., Inc., Twenty-Six v. Donovan*, 674 F.3d 869, 873 (D.C. Cir. 2012).  Here, the completed vote rendered Noble's claims moot, so he does not stand to gain any relief from a declaratory judgment that NALC violated the LMRDA before the vote. *Id.*; *Tidwell*, 239 F. Supp. at 226-27; *see also Sibley*, 916 F. Supp. at 62-63 (challenge to votes cast by electors rendered moot after vote was held, even though plaintiff sought a declaratory judgment).  Thus

---

[3] Moreover, to the extent that Noble's amended complaint seeks NALC's email list for future purposes, Count VI still enables Noble to pursue relief.  Count VI asserts that NALC violated the LMRDA by refusing to permit Noble to use NALC's email list on August 7, 2017 to distribute campaign materials for his candidacy for the 2018 NALC presidential elections.  First Am. Compl. ¶¶ 49-51.  NALC did not move to dismiss Count VI, so this opinion does not address Count VI and the Court takes no position on its merits.

Noble's requests for declaratory relief do not save his claims from mootness. The Court, in sum, "is not in the practical or constitutional position to grant the declaratory and injunctive relief requested by plaintiff[]." *Newdow v. Roberts*, 603 F.3d 1002, 1008 (D.C. Cir. 2010).

## CONCLUSION

For the reasons stated above, the Court grants Defendant's Motion to Dismiss Counts I, II, III, IV, and V of Plaintiff's First Amended Complaint. Accordingly, Counts I, II, III, IV, and V are dismissed without prejudice.

Because the Court now resolves Defendant's Motion to Dismiss, Defendant's Motion to Stay Discovery Pending Resolution of the Motion to Dismiss is denied.

A separate order accompanies this Memorandum Opinion.

DABNEY L. FRIEDRICH
United States District Judge

Date: January 4, 2018